**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**GUILLERMO BETANCOURT MARTINEZ,**

*Plaintiff*,

v.  Case No. 5:24-CV-0894-JKP

**ELIAS BAUMANN, et al.,**

*Defendant*.

## MEMORANDUM OPINION AND ORDER

The Court has under consideration Defendants' Motion to Dismiss' (ECF No. 8). Defendants (sometimes referred to as "the Government") seek to dismiss this action for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), or alternatively, for failure to state a claim under Fed. R. Civ. P. 12(b)(6). With Plaintiff's response (ECF No. 9) and Defendants' reply (ECF No. 10), the motion is ripe for ruling. For the reasons that follow, the Court grants the motion.

### I. BACKGROUND

The basic facts are not in dispute. But the legal ramifications of what has occurred is quite disputed. In May 2022, Plaintiff filed a visa petition with United States Citizenship and Immigration Service ("USCIS") on behalf of his mother, Lidia Esther Martinez Febles (I-130 receipt notice IOE9828234040; Department of State Visa Application Number HAV2023659029). The USCIS approved the petition on May 26, 2023, and forwarded it to the Department of State's National Visa Center.

On December 6, 2023, Febles appeared for a consular interview and applied for an immigrant relative ("IR5") visa at the United States Embassy in Cuba. The parties disagree as to the characterization of what transpired following that interview. Plaintiff contends that, following the interview, she learned that the case was placed in administrative processing pursuant to the Immigration and Nationality Act ("INA") § 221(g) (codified as 8 U.S.C. § 1201(g)). Defendants contend

that the consular office refused the application on December 6, 2023, pursuant to § 1201(g), and that the application remains refused.

In August 2024, Plaintiff commenced this action "to compel the Defendants to take action on and adjudicate his mother's properly filed I-130 visa application." ECF No. 1 ¶ 1. Through this suit, Plaintiff "challenges Defendants' failure to conclude the processing of Plaintiff's mother's visa application within a reasonable time." *Id*. ¶ 5. He premises jurisdiction on 28 U.S.C. § 1331 (federal question) in addition to the Mandamus Act, 28 U.S.C. § 1361. *Id*. ¶ 14. He asserts three claims: (1) unreasonable delay under 5 U.S.C. §§ 555(b) and 706(1) of the Administration Procedure Act ("APA"), (2) unreasonable delay under § 555(b) and the Mandamus Act, and (3) a Fifth Amendment due process violation caused by the delay and remedied through a writ of mandamus. *Id*. ¶¶ 30–46. Each claim is premised on a delay in adjudicating the relevant visa application. Although Plaintiff's mother submitted additional information when her application was placed in administrative processing, *see id*. ¶ 23, Plaintiff's claims all address an alleged failure to adjudicate the visa application, rather than any failure to reconsider the refusal based upon any newly submitted evidence.

Defendants filed the instant motion to dismiss in December 2024. They have moved to dismiss this action under Fed. R. Civ. P. 12(b)(1) on jurisdictional grounds and alternatively, under Fed. R. Civ. P. 12(b)(6), for failure to state a claim. For purposes of determining jurisdiction, Defendants attach a declaration of an attorney-adviser of the Office of the Assistant Legal Adviser for Consular Affairs. Plaintiff opposes the motion to dismiss with his own evidence. In this response, Plaintiff contends that 22 C.F.R. § 42.81(e) makes further consideration mandatory and provides the requisite live controversy for this case. Resp. at 7. Plaintiff contends that Defendants wrongly construe his claims as challenging the refusal of the visa application. *Id*. at 8. Defendants have filed a reply brief, and the motion is ready for ruling.

## II. BRIEF OVERVIEW OF LAW

Section 706(1) of the "APA provides relief for a failure to act" by permitting a "reviewing court" to "compel agency action unlawfully withheld or unreasonably delayed." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). But "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id*. at 64.

Section 555(b) is an "Ancillary" APA provision, which states: "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." This provision does not provide for a clear, non-discretionary duty for consular officers "to re-adjudicate [an] already-refused application." *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024). It instead "simply expresses 'a congressional view that agencies should act within reasonable time frames." *Id*. (quoting *Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984)).

"Mandamus is, of course, an extraordinary remedy" that requires the party seeking it to "establish (1) a clear right to the relief, (2) a clear duty by the respondent to do the act requested, and (3) the lack of any other adequate remedy." *Davis v. Fechtel*, 150 F.3d 486, 487 (5th Cir. 1998). For one "to have standing under the Mandamus Act, he must not only satisfy the constitutional requirements of injury, causation, and redressability, but must also establish that a duty is owed to him." *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992). The United States Constitution or a federal statute—other than the Mandamus Act—must provide a duty owed to the plaintiff. *Id*. A binding regulation can also provide such a duty. *Norton*, 542 U.S. at 65; *Fort Bend Cnty. v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 197 (5th Cir. 2023).

"When the right alleged stems from a statute, a duty is owed to the plaintiff for the purpose

3

of the Mandamus Act if—but only if—the plaintiff falls within the 'zone of interest' of the underlying statute." *Giddings*, 979 F.2d at 1108. The additional zone-of-interest test is a component of prudential, rather than constitutional, standing. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012). The test "is not meant to be especially demanding." *Id.* at 225 (quoting *Clarke v. Secs. Indus. Assn.*, 479 U.S. 388, 399 (1987)). Prudential standing (also known as statutory standing) is a "merits question of whether the asserted cause of action is a proper vehicle for the claimed injury" and "has nothing to do with whether there is a case or controversy under Article III." *Reed v. Marshall*, ___ F4th ___, ___, No. 24-20198, 2025 WL 1822673, at *3 (5th Cir. July 2, 2025) (citations and internal quotation marks omitted). And "unlike constitutional standing, a zone-of-interest challenge to standing can be waived." *Cornerstone Credit Union League v. Consumer Fin. Prot. Bureau*, ___ F. Supp. 3d ___, ___, No. 4:25-CV-16-SDJ, 2025 WL 1920148, at *6 n.7 (E.D. Tex. July 11, 2025).

A party seeking "relief for immigration delays under the Mandamus Act and the APA must make essentially the same showing for both claims." *Sawan v. Chertoff*, 589 F. Supp. 2d 817, 825 (S.D. Tex. 2008). As the Fifth Circuit has noted, "standing under the APA is determined by applying the same 'zone of interest' test as applied to determine standing in the mandamus context." *Giddings*, 979 F.2d at 1110; *accord Texas v. United States*, 126 F.4th 392, 415 (5th Cir. 2025) (applying zone of interest test in APA context).

### III. MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1)

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendants seek to dismiss this case for lack of jurisdiction on grounds that the case is moot because the consular office already refused, and thus adjudicated, the visa application. Defendants further argue that, even if not moot, the doctrine of consular nonreviewability makes the case non-justiciable. Although the Fifth Circuit has historically viewed this latter concept as a "jurisdictional principle," *see Mulligan v. Schultz*, 848 F.2d

655, 657 (5th Cir. 1988), the Supreme Court has more recently found that the doctrine "is not jurisdictional," *Dep't of State v. Munoz*, 602 U.S. 899, 908 n.4 (2024). Therefore, the Court will not consider the doctrine as a jurisdictional basis for dismissal.

**A. General Jurisdictional Principles**

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). By first considering a Rule 12(b)(1) motion, courts avoid "prematurely dismissing a case with prejudice" when it lacks jurisdiction. *Ramming*, 281 F.3d at 161. A "court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.*

Courts have "the power to dismiss for lack of subject matter jurisdiction based on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *accord Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019); *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). When determining issues of subject matter jurisdiction, the courts "may consider outside

matter attached to a motion to dismiss without first converting it into a motion for summary judgment." *State of Ala. ex rel. Baxley v. Woody*, 473 F.2d 10, 12 (5th Cir. 1973).

The Fifth Circuit has long distinguished between "facial" and "factual" jurisdictional attacks. *See Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). "An attack is 'factual' rather than 'facial' if the defendant 'submits affidavits, testimony, or other evidentiary materials.'" *Id.* When faced with a factual jurisdictional attack, "a plaintiff 'must prove the existence of subject-matter jurisdiction by a preponderance of the evidence' and is 'obliged to submit facts through some evidentiary method to sustain his burden of proof.'" *Id.* (quoting *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989) (internal quotation marks and footnotes omitted), *aff'd sub nom.*, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990)).

For factual attacks, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413 (quoting *Mortensen v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (3rd Cir. 1977)). On the other hand, a facial attack requires the courts to "consider the allegations of the complaint as true." *Id.* "Regardless of the nature of the attack, the plaintiff seeking a federal forum 'constantly bears the burden of proof that jurisdiction does in fact exist.'" *Chandler v. United States*, 338 F. Supp. 3d 592, 599 (N.D. Tex. 2018) (quoting *Ramming*, 281 F.3d at 161).

Defendants make a factual jurisdictional attack by presenting evidence with its motion to dismiss. Accordingly, for purposes of jurisdiction, the Court does not presume the truthfulness of any allegation of Plaintiff and determines whether jurisdiction exists by examining the complaint as supplemented by undisputed facts in addition to the Court's resolution of any disputed facts.

**B. Case or Controversy**

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980); *accord Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016).

> Embodied in the words 'cases' and 'controversies' are two complementary but somewhat different limitations. In part those words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government. Justiciability is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine.

*Flast v. Cohen*, 392 U.S. 83, 94–95 (1968).

Not only must a live "case or controversy" exist when an action commences, but "the general principles of Art. III jurisdiction require that the plaintiff's personal stake in the litigation continue throughout the entirety of the litigation." *Sosna v. Iowa*, 419 U.S. 393, 402 (1975). "To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

As recognized by the Supreme Court, the case-or-controversy requirement encompasses the dual concepts of standing and mootness. *See id.* at 64–67. "The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Geraghty*, 445 U.S. at 397 (citation omitted); *accord Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 344 (5th Cir. 2013). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (citation and internal quotation marks omitted). However, an action becomes

moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Campbell-Ewald Co.*, 577 U.S. at 161 (quoting *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)).

### 1. Mootness

Defendants argue that this case is moot because of actions taken prior to the filing of the case. As they point out, courts in the Western District of Texas have found cases moot under similar circumstances. *See Jolghazi v. Blinken*, No. 5:23-CV-01071-OLG, 2024 WL 4182593, at *2 (W.D. Tex. July 30, 2024) (relying on *Bamdad v. U.S. Dep't of State*, No. 1:23-CV-757-DAE, 2024 WL 1462948, at *3 (W.D. Tex. Feb. 9, 2024) and *Tariq v. Blinken*, No. 3:21-CV-02841-M, 2023 WL 2661543, at *1 (N.D. Tex. Jan. 31, 2023)); *Green Rev. Cooling, Inc. v. U.S. Dep't of State*, No. 1:23-CV-941-RP, unpub. ord. (W.D. Tex. Oct. 17, 2024); *Roshan v. U.S. Dep't of State*, No. 1:23-CV-1297-RP, 2024 WL 3843786, at *2 (W.D. Tex. July 22, 2024) (recommendation of Mag. J.) (case voluntarily dismissed before resolution of recommendation). Following these cases would provide a quick resolution to the instant motion. But this Court has an independent duty to assess whether jurisdiction exists under the circumstances of this case. In general, this requires courts to critically think about presented issues, as well as the circumstances in which the issues are presented.

Plaintiff urges the Court to distinguish these cases because none of them "considered the fact that administrative processing is mandatory where the consular officer issued the pro forma refusal solely to obtain additional information to ultimately determine visa eligibility." Resp. at 7. At this point, the Court declines to distinguish these cases on the facts. But, despite these cases, this Court respectfully disagrees that mootness is the jurisdictional issue presented by the pre-suit actions on the relevant visa application. While the Court recognizes that mootness may signify that a matter has already been resolved, mootness—as a legal principle—requires "an intervening

8

circumstance," *Genesis Healthcare*, 569 U.S. at 72, or "subsequent developments," *Flast*, 392 U.S. at 95. There is a "basic flaw" in governmental arguments that confuse the doctrines of mootness and standing. *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719 (2022). Mootness, not standing, "addresses whether 'an intervening circumstance [has] deprive[d] the plaintiff of a personal stake in the outcome of the lawsuit" and this "distinction matters because the Government, not [the plaintiff], bears the burden to establish that a once-live case has become moot." *Id*.

The characterization of this case as moot expands the term beyond its normal legal usage. In this Court's view, actions taken before the filing of a civil action may affect whether the litigant has standing to bring the lawsuit, but such actions do not render a case moot. This view is exemplified by the Supreme Court: "Mootness has been described as the doctrine of standing set in a time frame," with standing requiring a "personal interest that must exist" when a party commences litigation, and avoiding mootness requires that interest to continue throughout the existence of the case. *Arizonans for Official English*, 520 U.S. at 68 n.22 (citation and internal quotation marks omitted). To become moot, a case must have first been a live case or controversy. For these reasons, "the court must reframe the parties' mootness arguments in terms of standing doctrine." *Ebrahimi v. Blinken*, 732 F. Supp. 3d 894, 902 (N.D. Ill. 2024).

### 2. <u>Constitutional Standing</u>

Although Defendants do not contest jurisdiction based on standing, the jurisdictional principle is sufficiently related to their mootness argument to warrant consideration. They argue: "Given the refusal of the visa application in December 2023, there is no live controversy here." Mot. at 5. If true, then there was no live controversy at the commencement of the litigation—which calls Plaintiff's standing into question. Constitutional standing, which is a plaintiff's personal stake in the outcome of the case, is an "essential and unchanging part of the case-or-controversy requirement of Article III." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (quoting *Lujan v.*

9

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan*, 554 U.S. at 560–61).

Even though this Court disagrees with the invocation of mootness, the jurisdictional analysis is essentially the same whether viewed through the lens of mootness or standing so long as one keeps in mind that Plaintiff, rather than Defendants, has the burden to establish standing. If the visa application has been finally adjudicated, as Defendants contend, there is no action to compel, and no resulting injury to Plaintiff. In Texas, there appears to be a strong consensus for finding a lack of jurisdiction under the facts. As the Southern District of Texas stated earlier this year, "this Court and many others have determined that a consular officer's visa refusal constitutes a final adjudication, even if further administrative processing is contemplated." *Pegah Z. v. Blinken*, No. 4:24-CV-00529, 2025 WL 629343, at *3 (S.D. Tex. Feb. 4, 2025). In declining "to follow the divergent approaches in Plaintiffs' out-of-circuit authorities," it recognized on-point district court decisions that found a lack of jurisdiction. *Id*. at *3–4 (addressing jurisdictional issue as mootness). To bolster that position, it noted that "the only court of appeals that has addressed the issue reached the same conclusion." *Id*. at *4 (citing *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024) (per curiam)).

*Karimova*, however, has its detractors. One court has expressly declined to follow *Karimova* while noting it's unpublished nature "and 'a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition.'" *Ahmed v. Blinken*, 759 F. Supp. 3d 1, 10 (D.D.C. 2024) (citing D.C. Cir. R. 36(e)(2)). Another court recognized that *Karimova* "casts some doubt on the reasoning" in prior decisions but found no need to "conclusively

10

determine the extent to which *Karimova* disrupts prior decisions rejecting the government's reliance on the consular non-reviewability doctrine" in similar cases. *Asadi v. U.S. Dep't of State*, No. CV 23-1953 (RC), 2024 WL 3835409, at *4 (D.D.C. Aug. 15, 2024) (finding that the claims fail on their merits). Notably, *Karimova* does not address any asserted lack of jurisdiction. *Karimova* instead accepts that "[t]he district court had jurisdiction." *See* 2024 WL 3517852, at *3.

In a case cited by Plaintiff, one court has directly rejected a governmental argument that "Plaintiffs lack standing to pursue their claims because their applications have, in fact, been finally refused." *See Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 281 (D.D.C. 2016). While recognizing that the contention that the visa "applications have already been finally adjudicated is intricately intertwined with . . . the doctrine of consular nonreviewability," it briefly noted three conclusions: (1) applications "have not been finally refused" when they "remain in administrative processing" and individuals suffer an injury in fact by "the failure to receive final decisions" on their visa applications "within a reasonable period"; (2) "the causation prong of the standing inquiry" is satisfied by "the lack of final decision" on the applications, which "is quite clearly caused by Defendants' conduct"; and (3) an order compelling the government to adjudicate the visa applications "would directly redress Plaintiffs' injury caused by the Government's failure to decide." *Id*. at 281–82.

*Nine Iraqi Allies* is in stark contrast to "the 'complete consensus among the federal courts in Texas on this issue' . . . that denial of a visa application pursuant to § 1201(g) fulfills the government's duty to adjudicate the application and renders claims such as Plaintiffs' moot." *Kulagin v. Blinken*, No. A-24-CV-00953-ADA, 2025 WL 1231897, at *2 (W.D. Tex. Apr. 28, 2025) (quoting *Khaleel v. U.S. Dep't of State*, No. H-24-2970, 2025 WL 777082, at *2 (S.D. Tex. Mar. 11, 2025)). Mootness aside, if denial under § 1201(g) fulfills the government's duty then Plaintiff in this case lacks standing—at least on his claims under the APA and mandamus. *Nine Iraqi Allies*

11

depends on a lack of finality to find standing.

For jurisdictional purposes, the key determination is whether the Government has made a final decision on the relevant visa application. In *Karimova*, the D.C. Circuit relied on regulatory requirements that consular officers must issue or refuse a visa application and have no ability to "temporarily refuse, suspend, or hold the visa for future action." 2024 WL 3517852, at *1. However, this seems to ignore the factual possibility that consular officers might disregard the regulations. Courts are filled with lawsuits resulting from failures to follow statutes and regulations. It appears unrealistic to presume compliance merely because a regulation seemingly provides no alternatives. *Nine Iraqi Allies*, for instance, dealt directly with a situation where the court found that the presented facts did not fit the regulatory norm.

In *Nine Iraqi Allies*, the plaintiffs presented an email from the relevant Immigrant Visa Unit which stated that a submitted visa application remained "in 'administrative process, which must be completed before a final determination can be made on his [visa] application.'" 168 F. Supp. 3d at 280. The court viewed this email as "evidence, which bears on facts critical to establishing the Court's jurisdiction." *Id*. The court rejected the government's argument "that because Plaintiffs' applications have been finally refused," the court should not "supplement the record with evidence to the contrary." *Id*. This Court agrees that submitted evidence may show jurisdiction even if compliance with regulatory norms would show no injury to the plaintiff.

Plaintiff in this case has also presented evidence that, although the government refused the visa application, it also remains in mandatory, administrative processing. An email (Ex. A) dated January 17, 2024, states that the visa application was still in administrative processing. *See* ECF No. 9-1. Although the email is in Spanish, no one indicates that Plaintiff incorrectly interprets it. Furthermore, an email (Ex. B) dated May 1, 2024, states that the "immigration visa application is undergoing legally mandated administrative processing." *See* ECF No. 9-2. Although a published

notice on the State Department's Consular Electronic Application Center (Ex. C) clearly shows the Immigration Visa Application as "Refused," it further states in pertinent part:

> A U.S. consular officer has adjudicated and refused your visa application. Please follow any instructions provided by the consular officer. If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete.

ECF No. 9-3.

The in-district cases relied upon by Defendants (*Jolghazi*, *Bamdad*, *Green Rev. Cooling*, and *Roshan*) indicate that the respective plaintiffs viewed their visa applications as pending, but the resolution of those cases lack any indication that evidence existed like present in this case. Nevertheless, while this Court is convinced that standing, rather than mootness, is the proper jurisdictional issue presented, it is far from convinced that Plaintiff has shown that he has standing to pursue any of his claims. Even with the evidence presented in this case and perhaps lacking from cases decided previously in this district, this Court hesitates to create a district split. As in *Kulagin*, Plaintiff has "not provided a convincing justification for deviating from [the cited] authorities, under which Defendants have satisfied their duty to adjudicate the visa application[] by refusing" the visa for Plaintiff's mother. *See* 2025 WL 1231897, at *2.

This Court finds persuasive a recent decision from the Eastern District of Michigan. *See Sankari v. U.S. Dep't of State*, No. 2:24-CV-12975, 2025 WL 1550231 (E.D. Mich. May 30, 2025). Relying on an unpublished decision from the Sixth Circuit, *Sankari* recognized that "Plaintiff here lost standing 'the moment the consular officer denied [the relevant] visa' under 8 U.S.C. § 1201(g)." *Id.* at *6 (quoting *Hussein v. Beecroft*, 782 F. App'x 437, 442 (6th Cir. 2019)). Unlike the apparent congruity of Texas courts on the matter, *Sankari* noted that it was "cognizant of the tremendous split in authority on the issue of whether the Government has a nondiscretionary duty to complete administrative processing after the denial of a visa application." *See id.* at *7. *Sankari*

13

recognized that "Plaintiff's complaint does not fail for lack of supporting case law," but the court ultimately found the "Defendants' position is better reasoned." *Id*. It also aptly noted that "it is not for the Court to fix problems in the statutory and regulatory scheme that impact visa applicants whose cases are placed into administrative processing," as these "issues are for the legislature or rulemaking body to resolve." *Id*. It concluded that "Plaintiff lacks standing to seek relief under the APA or Mandamus Act." *Id*. at *8. With respect to the plaintiff's due process claims, it found that "even though Plaintiff may be suffering incidental harm because his parents' visas are undergoing administrative processing, 'that harm does not give [him] a constitutional right to participate in [his parents'] consular process.'" *Id*. at *9 (quoting *Dep't of State v. Munoz*, 602 U.S. 899, 917 (2024)).

Similarly, this Court finds a Nebraskan decision persuasive. *See Al Khalo v. Goldman*, 769 F. Supp. 3d 899, 904 (D. Neb. 2025). "Having carefully reviewed the deep split of authority on this issue, th[at] Court recognize[d] there is obviously considerable room for disagreement." *Id*. (citing cases). But the plaintiff there, like the Plaintiff here, "has not sufficiently identified a 'discrete agency action that' the defendants were 'required to take' after refusing [the relevant] visa application." *Id*. at 905 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). Consequently, "'unreasonable delay' and mandamus claims" are subject to dismissal for lack of subject matter jurisdiction. *Id*. And the plaintiff's due process claims failed state a claim upon which relief could be granted due to *Munoz*. *Id*.

There may be factual differences between the present case and the in-district cases noted above, but one constant is the definitive refusal of the visa application. No one here disputes that the consular officer refused the relevant visa application. Under the noted cases, such a refusal satisfies the governmental duty to adjudicate the application even if the visa remains in administrative processing. And, after considering the statutes and various cases on the issue, this Court

14

finds the better reasoned view is consistent with the consensus that "a consular official's visa refusal under § 1201(g) fulfills the government obligations under the APA to conclude a matter presented to it." *Khaleel*, 2025 WL 777082, at *3 (citations and internal quotation marks omitted). The undisputed facts show that a consular officer refused the relevant visa application in this case and that it remains refused even though it has been placed in an administrative process. The Court need not infer such refusal from the regulatory scheme that provides only for refusal or issuance of the visa. A consular officer refused the application in this case and the administrative process does not change the refusal. Absent binding authority dictating otherwise, the refusal of the visa application is final for purposes of the claims raised in this action. Because the visa application was finally refused prior to Plaintiff bringing this case, he lacks an injury in fact caused by the alleged delay. Accordingly, he lacks standing for his APA and mandamus claims.

Because all of Plaintiff's requested relief focuses on the adjudication of his mother's visa application, this Court is unable to provide Plaintiff with any requested relief. Plaintiff has not shown that he has standing even for his due process claims. He premises his Fifth Amendment claim on a delay in adjudicating his mother's visa application, the final adjudication of that application as discussed above, also renders him without an injury in fact on such claim thus depriving him of standing.

## IV. OTHER MATTERS

Because the Court has found that Plaintiff lacks constitutional standing to pursue the claims asserted in this action, it has no need to consider issues of prudential standing or whether the Plaintiff has stated a claim that survives dismissal under Fed. R. Civ. P. 12(b)(6). Indeed, in most instances, it refrains from commenting or discussing the merits of claims over which it lacks jurisdiction. Nevertheless, the Fifth Circuit recognizes circumstances where an alternative ruling on the merits may be appropriate. *See Cheejati v. Blinken*, 106 F.4th 388, 396 (5th Cir. 2024)

(addressing merits of ruling on preliminary injunction "to the extent [its] jurisdictional conclusion is incorrect"), *cert. denied*, 145 S. Ct. 1126 (2025).

The Court has no reason to address Plaintiffs' APA or mandamus claims under Rule 12(b)(6). But, because other courts have addressed Fifth Amendment claim on the merits, the Court finds it prudent to specifically find in the alternative, that if standing were to exist for the due process claims, such claims clearly and undoubtedly lack merit under the facts here. *See Khaleel*, 2025 WL 777082, at *4; *Sankari*, 2025 WL 1550231, at *8–9; *Al Khalo*, 769 F. Supp. 3d at 905; *Roshan*, 2024 WL 3843786, at *2. Plaintiff has stated no plausible Fifth Amendment claim that survives Rule 12(b)(6).

In addition to this alternative finding as to the due process claims, the Court also deems it prudent to consider other matters raised by the parties. Plaintiff argues that when "issues of fact are central both to subject matter jurisdiction and the claim on the merits," the Court "must assume jurisdiction and proceed to the merits." Resp. at 3 (quoting *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004)). But "whether a court can ever 'assume jurisdiction and proceed to the merits,'" has been called into question. *See Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 407 n.20 (5th Cir. 2014). Further, application of *Montez* requires that jurisdictional issues hinge on issues of fact. *See id.* at 407. This case, however, does not require resolution of disputed facts. Sure, the parties disagree whether the mother's visa application was finally denied on December 6, 2023, when she left her interview without the application being approved, but the disagreement is regarding the finality of the refusal of the visa application. Both sides agree that the Government refused the application. They further agree that the application remains refused. The finality of the refusal is an issue of law that is capable of resolution without proceeding to the merits.

Lastly, in response to the motion, Plaintiff argues for the first time that Defendants have a

mandatory duty under 22 C.F.R. § 42.81(e) to reconsider its refusal when the applicant provides additional evidence. Resp. at 7. One court has noted that "most courts that have confronted this regulation have construed it to create a mandatory duty on the part of the consular officer to reconsider the refusal of a visa application when the applicant presents new evidence tending to overcome the basis for the refusal." *Ghannad-Rezaie v. Laitinen*, 757 F. Supp. 3d 148, 153 (D. Mass. 2024). Another court, however, has held that "a consular officer's duty to reconsider a refused application under Section 42.81(e) is discretionary." *Ramizi v. Blinken*, 745 F. Supp. 3d 244, 264 (E.D.N.C. 2024), *appeal voluntarily dismissed*, No. 24-2008, 2024 WL 5509498 (4th Cir. Dec. 9, 2024). Neither the Supreme Court nor the Fifth Circuit Court of Appeals has addressed whether § 42.81(e) provides a mandatory duty of reconsideration.

Without such binding precedent, this Court concurs with the discussion in *Ramizi* finding the regulation provides discretion because any reconsideration is dependent on the consular officer viewing submitted evidence as "tending to overcome the ground of ineligibility on which the refusal was based." *See* 745 F. Supp. 3d at 264 (quoting § 42.81(e)). The phrase, "tending to overcome" implies discretion. *Id*. Because the Court finds *Ramizi* more persuasive, § 42.81(e) provides Plaintiff no basis for relief even had he raised the matter in his pleading.

## V. CONCLUSION

For the foregoing reasons the Court **GRANTS** Defendants' Motion to Dismiss' (ECF No. 8). By separate document, the Court will enter a final judgment dismissing this action for lack of jurisdiction.

**SIGNED** this 28th day of July 2025.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE